I'd like to point out to the panel that the next Appley attorney is Christopher Bates and you'll find him under the initials UU for unknown user. Mr. Bates can you hear me? Yes I can. And Mr. Supala can you hear me? Yes I can. Great. Please read case number 19-2918 Mohamud Hassan v. William Barr. All right. Mr. Supala please proceed. Thank you your honor. May it please the court my name is Dan Supala with the Nyland Johnson Lewis Law Firm in Minneapolis. We represent the petitioner Mr. Mohamud Hassan in this petition for review. Before I get going I would just like to briefly acknowledge my colleague at Taft Stettinius Kristen Pagel who is listening on the telephone this morning. She spent a significant amount of time working on this case both before the immigration judge the BIA and preparing this appeal. So her name is not listed on the brief but I do want to acknowledge her work in this case. Mr. Hassan is asking the court to grant his petition for review and reverse the decision of the BIA that determined he was not eligible for a deferral of removal under the Convention Against Torture. I'd like to talk about three issues this morning. Number one why the court should not decide the base this case on the basis of the Cherishell decision that's urged by the respondent the Department of Homeland Security in their response brief. Number two briefly talk about the Nasrallah versus Barr case from the United States Supreme Court this past June which held that the court the jurisdiction stripping provisions would do not apply to the Convention Against Torture and that this court can review both the immigration judge and the BIA's decisions factual determinations for clear error. And third why in our view the decisions of the immigration judge and the Board of Immigration Appeals in addition to the factual errors that were committed erred when it did not aggregate the risk of the three issues that we've raised in the brief in deciding and concluding that it was not more likely than not that Mr. Hassan would be tortured if he were to be removed to Somalia. In its response brief the Department of Homeland Security has argued that counsel let me start judge Logan let me start you with the last point I don't understand how your aggregate risk argument can be can be applied to the specific intent requirement in the in the C.A.T. program in other words specific intent that the the torture specific intent is it one risk or is it the does it does the torture have to have specific intent as to the aggregate risks that you're talking about in order for your client to prevail and if not what's the relevance of the aggregate risk argument. The court should I think the answer to your question is this judge Logan is the court should view the specific intent and the risk for each of the three each of the three risks that we've raised in our brief so we've raised three things number one it's not that's not an aggregation that that's a that's an alternative presentation because I because we argued that he's got four vulnerabilities all we have to do is find one torture for any of any of any of the one to to satisfy the specific intent requirement that's not aggregation that's arguing in the alternative I agree with you that I don't think it's that it's aggregation but I think the I think the answer to your question though is for the three things that we've raised the court would look at the specific intent to torture of whoever's going to be doing the torturing for that particular issue and then once the court has done that with each of those three things look at that in the aggregate and that's how you stop that's I don't understand why you look at it in the aggregate if there is a failure to prove there is a torture with respect to any of the categories of risk what aggregation analysis remains well I think so you're you're gonna have you know you're gonna have an almost torture three times somehow equals a one torture with specific intent as to a risk see that doesn't that doesn't follow I agree with you it doesn't follow but I think DNA but I think the reason that respectfully I think that the that it's a bit we're looking at it perhaps in different ways is that so just to give you an example so the first issue that we raised is that mr. Hassan would be tortured because of his clan membership and that the acquiescence that the Somali federal government would acquiesce in that torture the immigration judge agreed at least at the last point and that's the court were to find that that the the Somali federal government or that a majority plan would does not have the specific intent to torture mr. Hassan if he were to be returned to Somalia well there's still two other issues that we've raised number one him being from the United States and what we've what we've termed being westernized and number two that he was on the December 7th repatriation flight so even if the court were to find that perhaps at least to the first issue for example that a majority clan did not have the specific intent to torture mr. Hassan upon his return the court could still look to the other two issues that we've raised both of those the torture stemming from al-shabaab and the Somali federal government's failure to control them and their infiltration and still determine that if those other two issues had reached over the what we call a 50% threshold then the court could still aggregate those two things and it could still find that mr. Hassan had met his burden under the convention wait wait what's what's the 50% threshold that well there's a threshold under under the convention against torture mr. Hassan is required to show that it's more likely than not that he would be tortured if he were to be returned so in cases cases that discussed you know the how you quantify that they talk about it in terms of the same sort of civil burden that a litigant would have in a civil case when they have the burden of proof is you have to show that it's more likely than not you have to get over that 50% hurdle to show that you would prevail and so it courts have talked about how it's not it's not a math like a strict mathematical quantitative analysis courts talk about that and talk about how you analyze the possibility of torture and how you aggregate that it's not a strict mathematical formula but when you when you look at all three of the things and then you add them up and consider them in the aggregate that's how the court is supposed to approach this under the convention against torture and what's your best case for this aggregate risk and 50% threshold interaction sure well we raised three issues number one that mr. Hassan would be tortured I asked you for your best case that then you can go all best case I thought you meant you wanted me to give my best case no no no I meant your but you're you're the the the circuit authority that you're that is in your view most most friendly to this argument so to speak sure we've cited a case from the Fourth Circuit it is the Rodriguez areas versus Whitaker case it's a 2009 decision that involves an appeal from the board that's right you don't have to explain it I did now I know where to go look thank you okay yeah and just to close the loop on that your honor the the reason that we've cited that case is it at least in our view it provides a good summary and analysis of how the court should think about it when it's talking about what it means to aggregate the risk and part of that take with the immigration judge and with the Board of Immigration Appeals decisions in this case is that it's not enough to simply put in the legal standard or the boilerplate language about about you know in gate and that the material that in the aggregate that the that the respondent in the immigration court of the petitioner on appeal in this case hasn't met that risk but the court is required to meaningfully engage with the material and analyze it and so in the two decisions that we have the court let me just ask was that was that case a was that a an acquiescence focused case or was it a government torture case the Fourth Circuit case that was I believe it did involve some acquiescence it was excuse me it was a case from El Salvador where part of the harm that was excuse me part of the harm that was being dealt with was the government's control of gang members in El Salvador so it's the sort of traditional kind of case that you would see coming out of the Central America region but it does have parallels to our case where we have Al-Shabaab you know both running parts of Somalia as the de facto government and even in the larger cities such as Mogadishu being able to carry out bombings and having infiltrated at least low levels of the Somali federal government including the security forces and there's evidence that we've cited in the record that individuals who perpetrated some of those bombings are wearing the security uniforms and using the identification of this the of the security forces and so in our case what is the claim protected social group here for the the social group it's mr. Hassan's and the big Eddie clan and that is one of the other issues that we've raised in our appeal and and now under the Nasrallah versus bar case the court is allowed to look at that issue and determine whether the Board of Immigration and the the Board of Immigration Appeals or the immigration judge aired when they made that factual determination and I just didn't briefly go through that because they think it is an important issue the Board of the Immigration Court had determined that mr. Hassan's for your you know that that's only one of your four risks that we're supposed to aggregate or the BIA is supposed to aggregate what's the what's the protected social group for for what is westernized Somalis is that another protected group and is our people on that December fall airplane another social group yes that's and that's how it was presented to the immigration judge and the Board of Immigration Appeals the department did not the torture has to have the specific intent with respect to just the one just the sub that particular social group right yeah the torturer has to have a specific intent that the acts that it commits will result in torture that's part of what's wrapped up in the share a shell case that we've talked about in our reply very specific intent to torture a member of the group I agree with I agree with your reply brief it's not specific intent to to torture a particular individual although in a family protected group case it gets close to that but you have to have the specific intent to torture a member of the protected group that's that's right I agree with you your honor and so you're the other two groups that we've that we've talked about would be America like you know westernized Somali so men and women who've lived in Somalia for mr. Hassan for 18 years and then were returned to in late late last year that's but it seems to me that makes the the acquiescence issue necessarily particularized as to each group I think I think you could argue and I think you could analyze each of those even each of those issues and so you're looking for you know group one clan membership what's the evidence of specific intent to torture members of that group for the westernized westernized folks who are coming back from to Somalia from the United States what's the specific evidence or the specific intent to torture that group and then for the last group which would be the 92 men and women who were on that repatriation flight of December 7th what would be the evidence that those people would be specifically tortured if they were returned to Somalia all of those all of those are set out in our brief but when the court looks at each of those three categories and the intent to torture the men and women that fall into those categories then it aggregates the risk then the court can go through and make that determination. Mr. Sukali got just about a minute of rebuttal left if you'd like to reserve it. I would like to reserve it thank you. Mr. Bates. Good morning your honors and may it please the court. Christopher Bates for the respondent. Under the substantial evidence standard it is the petitioner's burden to show that the evidence in this case compels the conclusion that he is more likely than not to suffer torture if he is returned to Somalia. Petitioner has not met that burden and this to deny the petition for review. I'd like to begin with this issue of aggregation. Petitioner argues that both the immigration judge and the board erred in failing to aggregate the risk of potential torture were he removed to Somalia. In fact the board expressly addressed the petitioner's argument in his decision. At page four of the record in the board's decision the board writes the record reflects that the immigration judge considered the aggregate risk faced by the respondent regarding the likelihood of torture. And I would also draw the court's attention to the Omar case which is a case decided just a few months ago about which we just submitted a 28j letter to the court that the Omar case was decided after a briefing in this case had concluded. In the Omar case this court held that addressing risk factors individually is permissible so long as the board ultimately considers all of those factors together. And in the Omar case the court found that the board had permissibly and appropriately considered the risk factors together where the board recognized at the outset that it must consider all evidence relevant to the possibility of future torture and then ultimately address the risk of torture quote overall. Similarly here the board recognized at the outset of its decision that it considers all evidence relevant to the possibility of future torture. It again stated that the immigration judge had properly considered the aggregate risk and then at the end of the decision it said in sum though sympathetic factors are present in respondents case he has not met his burden to show that he would more likely than not be tortured if he were removed to Somalia. So the fact that the board went through the factors individually does not mean that it failed to aggregate risk recognize its responsibility to consider the risk factors in the aggregate and then did ultimately consider them overall or in sum as the board did here. Turning to the question of specific intent the petitioner in the reply brief I think tries to frame this issue somewhat too narrowly talks about the facts of the Cherichel or Cherichel case argues that those facts are not on all fours here. I think it's important to take a look at what the board said specifically on this issue so so the board said that the petitioner had failed to establish that the government or any of the potential torturers that he identifies have a specific intent to inflict torture upon him and then the board cited the Cherichel decision then it also cited the Ademo decision out of this court in which this court said that a petitioner raising a convention against torture claim must identify specific grounds that indicate he would be personally at risk from torture and then in a follow-on sentence the board in this case said that the petitioner failed to show a particularized risk. So it's not just this question of specific intent standing alone or the abstract but the petition must show a specific intent with regard to him or in the words of the Ademo case specific grounds that indicate that he would personally be at risk from torture and in the Ademo case which was a case involving an Ethiopian national who alleged he had participated in activities with a group called the Oromo Liberation Front that he participated with activities with that group in the United States and that the government of Ethiopia tortured members of that group in Somalia. This court wrote that the existence of a consistent pattern of gross flagrant or mass violations of human rights in a particular country does not as such or in of itself constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture but that again specific grounds must exist that though the petitioner in this case has submitted evidence of country reports showing human rights abuses in Somalia he has not submitted evidence that that he would be a particularized risk himself. It certainly has not counsel counsel counsel this judge Logan it seems to me the argument turns on the size or magnitude of the particular group if you've got if you've got the protected group is is a family it's pretty it's pretty easy to show that there's a torturer out there who would torture the family and the plaintiff's a member of the family so the specific intent as to the family suffices as to the individuals that's quite different than than all the Oromos in in Ethiopia who have migrated to Somalia so the size of the group here here if if there was a torturer with respect to the the the tragic December flight I suppose anybody on the flight would would be at risk of that torture to to that torture uh I think not so not so much anyone anyone who's coming back from some western place as as for who knows what you whatever so you have don't you have you have to particularize the the analysis to the group being claimed the protected group being claimed I think it certainly is relevant your honor to consider this question uh with regard to how the petitioner is is framing uh his asserted likelihood of torture certainly if it were the case that the evidence the record compelled the conclusion that anybody on that flight were more likely than not to experience torture if they were returned to Somalia and the petitioner established he were had been on that flight and therefore a member of the group certainly that would go a long ways towards success for him on his claim and you know just just taking that that flight uh as as one example so this one talks about the news also testified that to his knowledge that there was only one instance in which he was identified himself as being on that flight and that that was a reference in a Minnesota radio broadcast he's not named as a plaintiff in the class action with regard to the flight and in fact one of the witnesses at the hearing I don't have her name in front of me but it was the petitioner sister's who was the final witness at the hearing she testified that she had heard about the flight on social media but that she didn't even know that the petitioner was on the flight until the petitioner's sister told her so again the standards here the substantial evidence standard the petitioner must demonstrate that the evidence compels the conclusion he is more likely than not to suffer torture so you know even if that flight received notoriety and individuals on the flight you know if they were known to have been on that flight in Somalia uh would be at a higher risk Fishner has not established that it would not it would not be hard for a torturer to find out who was on that flight even if it's not generally known in the press so I think I think you're if you're if you're if your overall position turned on that argument I am far from persuaded I understand your honor certainly with the standard of review also the petition would have to show that the evidence compelled the conclusion that any individual on that flight were more likely than not to suffer torture if they were returned to Somalia and the evidence in the record does not counsel isn't the easy answer with respect to the flight that there's a there's no basis for acquiescence proof at this point uh that's correct as well your honor and that was the the third uh uh point that I wanted to address uh with your honors uh the acquiescence point so the petitioners uh points to evidence in the record that al-shabaab still has a presence in Somalia there are areas of the country that are uh still under al-shabaab control but that's that's not sufficient to establish acquiescence here what this court has said is that you know the existence of a you know a continuing problem awareness or an inability to stop uh activities of a group that that does not rise to the level of acquiescence there must be something closer to willful blindness and I think if your honors take a look at uh the cases where this court has addressed this question of acquiescence uh this case is closer to uh those where this court has found no acquiescence than those cases where this court has remanded for further consideration of acquiescence so I I would highlight in particular the Aguinaldo Lopez case that involved a petitioner from El Salvador and the court there found that the evidence did not you know compel a conclusion of acquiescence where the country reports identified efforts by the government and gang violence including a program to rehabilitate gang members and here there is a lot of evidence in the record about the efforts by the Somali government to uh fight and uh to reduce the influence of al-shabaab certainly you know they have not completed those efforts certainly you know challenges remain but there's evidence in the record about you know fighting a military conflict between the government and al-shabaab about how the government has pushed al-shabaab out of population centers back into the countryside and um by contrast uh cases where this court has uh remanded for further consideration of an acquiescence issue such as the uh Muawit case uh there that involved a Lebanese national who alleged uh that he faced face torture by Hezbollah and uh there this court said that the Lebanese government had made no attempt to disarm Hezbollah um and that the Lebanese government's control over Hebanah over Hezbollah was was limited there was also the Ramirez uh payroll case which we uh discussed in our briefs and uh there this court remanded for further consideration of an acquiescence issue where there was uh evidence of wide-scale police participation in harmful actions on behalf of the cartel so certainly you know yeah can I ask you about uh this is Judge Grunder can I ask you about this aggregation theory let's assume acquiescence let's assume one torturer al-shabaab in this instance and um the petitioner asserts three different reasons let's say he can unequivocally show a 17 percent chance for three reasons three separate reasons is he entitled to cat relief at that point um so this court has not expressly addressed this addition process uh other courts including the uh ninth circuit uh which let me just try to make sure that I'm referring to the right case here um I'm sorry this is the third circuit the the Kamara case out of the third circuit um the third circuit has has said that if one you know engages in this sort of numerical analysis and there are you know a few different possibilities of torture that individually are less than 50 percent but you and it's more than 50 percent uh in the Kamara case the the third circuit said that uh in that case uh in that instance that the petitioner would have met his burden now this court has not engaged in that sort of analysis um uh in a case that has yet come before it the most recent statement uh of this court on the question of aggregation as I mentioned is the Omar case that didn't address specifically with the question of addition it dealt more of the question of whether the uh board had in fact aggregated and I think that proper application of Omar to this case uh would indicate the board did aggregate as it did Omar but as to your honor's question about you know if one wants to quantify the risk of torture and add them all together this would specifically address this issue but there are other circuits that said that um that is the right way to do the analysis if there are no further questions for this court uh we would ask the court to deny Mr. Esau's petition for review. Seeing none, thank you Mr. Bates. Mr. Supala, you were both. Thank you your honor um just a couple of brief points um with regard to um the discussion about the notoriety of the December 7th flight uh and people learning about that um the witness who testified about that before the immigration judge her name was Kadra Suleiman and if you look at pages 341 and 342 of the administrative record that's part of her testimony where she talks about um how people find out about things um in Somalia and one of the news is not only passed by news stories and on Facebook and things like that but a lot of the information that people are finding out about who's on what flight you know for example um or people who have passed away things like that happens by word of mouth and so um the way that people find out that sort of information um isn't always going to be just limited to the um articles in uh NPR for example so I would urge the court to look at that uh and request that the court grant the petition for review. Thank you. Thank you Mr. Supala. Thank you also Mr. Bates. Court appreciates your presence uh before us today in our virtual forum and we will consider your briefing and take the matter under advisement. Counsel you may be excused. Thank you.